UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.

       Case No. 20-20245

JOSEPH GREGORY DUMOUCHELLE,

       HON. MARK A. GOLDSMITH

       Defendant.
_____/

**OPINION & ORDER
(1) DENYING DEFENDANT'S REQUEST FOR REPLACEMENT OF COUNSEL (Dkt. 82); (2) DENYING DEFENDANT'S MOTION TO WITHDRAW PLEA OF GUILTY (Dkt. 88); AND (3) DENYING DEFENDANT'S REQUEST FOR WITHDRAWAL OF COUNSEL (Dkt. 89)**

This matter is before the Court on Defendant Joseph Gregory DuMouchelle's request for replacement of counsel (Dkt. 82) and request for withdrawal of counsel (Dkt. 89). Also before the Court is DuMouchelle's motion to withdraw his plea of guilty (Dkt. 88).[1] The Court held a hearing on DuMouchelle's requests and motion on July 18, 2022. For the following reasons, the Court denies the requests and motion.

**I. BACKGROUND**

On September 17, 2020, DuMouchelle pleaded guilty to committing wire fraud. Rule 11 Plea Agreement (Dkt. 14). Since then, DuMouchelle has repeatedly raised baseless issues with his counsel in a misguided effort to postpone his sentencing. As this Court stated when DuMouchelle sought to derail sentencing by purporting to fire Gleeson just a few months ago:

> The sentencing date has been a moving target due to DuMouchelle's maneuvering. Days before his September 2021 sentencing date, he fired [his prior appointed counsel, Jonathan] Epstein. Similarly, one day before the January 28[, 2022]

---

[1] The Government filed a response to DuMouchelle's motion to withdraw his plea of guilty. Gov't Resp. to Def. Mot. to Withdraw Plea (Dkt. 90).

submission deadline [for guidelines disputes]—which would have been the prelude for setting a sentencing date—DuMouchelle fired [his current appointed counsel, Gerald] Gleeson. . . . DuMouchelle's firing of Gleeson was perfectly timed to derail the setting of a new date.

2/14/22 Op. at 5–6 (Dkt. 53).[2]

The current effort to remove Gleeson is eerily similar to DuMouchelle's January 2022 effort, when he alleged that there had been a breakdown in the attorney-client relationship. 1/27/22 Def. Mot. for Withdrawal of Atty (Dkt. 46).[3] The Court found that all of DuMouchelle's allegations were "either demonstrably false, unsubstantiated, or fail[ed] to establish a complete communication breakdown that cannot be overcome." 2/14/22 Op. at 7. The Court further explained that, contrary to DuMouchelle's allegations, "the evidence show[ed] that Gleeson has communicated often with DuMouchelle and that Gleeson has provided DuMouchelle with an outstanding defense." Id. at 14. "The disconnect between the allegation of a breakdown in communication and the overwhelming contrary evidence can be explained only by DuMouchelle's transparent motivation to delay sentencing." Id. The Court, accordingly, denied the motion to

---

[2] While the February 2022 opinion was filed under seal, the language quoted from the opinion reveals nothing sensitive.

[3] In the January 2022 effort, DuMouchelle put forth several primary reasons for the alleged breakdown: (i) Gleeson was not fully prepared for meetings with DuMouchelle and did not dedicate sufficient time to DuMouchelle during those meetings; (ii) Gleeson failed to give DuMouchelle possession of a disc containing 4,132 files and, relatedly, the letter that Gleeson gave DuMouchelle to sign to gain access to these files was not "sufficient or acceptable"; and (iii) Gleeson failed to hire an investigator. Additionally, DuMouchelle raised several de minimis concerns: (i) Gleeson failed to answer certain of DuMouchelle's questions and forgot certain information during their conversations; (ii) Gleeson failed to discuss a preliminary order of forfeiture with DuMouchelle before it was entered; (iii) Gleeson failed to answer the Court's questions about DuMouchelle's bankruptcies during a Zoom hearing; (iv) DuMouchelle sent Gleeson a list of 45 items that DuMouchelle provided to the Government in proffer sessions, but Gleeson has not discussed these items with DuMouchelle; (v) Gleeson pushed DuMouchelle to make a decision about the plea agreement; and (vi) Gleeson took an adversarial stance towards DuMouchelle, including criticizing DuMouchelle's choice of car. See 2/7/22 Def. Letters at PageID.289–294 (Dkt. 52).

withdraw Gleeson as counsel. Id. at 16. However, the Court gave DuMouchelle an opportunity to retain counsel of his choosing, setting a deadline of February 24, 2022 for DuMouchelle to retain counsel and file a motion to substitute. Id. It also set a deadline of March 7, 2022 for DuMouchelle to file a motion to modify or withdraw from the plea agreement, as the parties had alerted the Court that one or both sides might attempt to modify or withdraw from the agreement. Id. at 17.

The February 24 and March 7 deadlines came and went without DuMouchelle filing any motion to substitute counsel or motion to modify or withdraw from the plea agreement. The Court entered an order setting a new deadline for the parties to file briefing regarding sentencing guidelines disputes (such as the applicability of the sophisticated means enhancement) as well as a deadline for sentencing memoranda. 5/12/22 Order (Dkt. 66). It also set a hearing to determine the amount of loss and restitution, and set the sentencing date for July 28, 2022. Id.

On July 14, 2022—the due date for DuMouchelle's sentencing memorandum, which was supposed to contain, among other things, his post-hearing briefing on loss and restitution—DuMouchelle filed a pro se request for replacement of counsel, stating that the request "is to take the place of the sentencing memorandum due today, July 14, 2022." Def. Req. for Replacement (Dkt. 82).[4] Four days later, DuMouchelle filed another pro se request for withdrawal of counsel, which further expanded upon his prior request. Def. Req. for Withdrawal (Dkt. 89). He also filed, through Gleeson, a motion to withdraw his plea of guilty. Def. Mot. to Withdraw Plea (Dkt. 88).

---

[4] The filing of this pro se request prompted the Court to extend DuMouchelle's deadline to file a sentencing memorandum to July 15. See 7/15/22 Order (Dkt. 85). However, DuMouchelle did not file a sentencing memorandum by the extended date. Gleeson submitted a proposed stipulated order on July 21 to extend the filing deadline to July 22 at 5 p.m., to which the Court agreed, 7/21/22 Order (Dkt. 92). DuMouchelle attempted to sabotage this new deadline, filing, on his own, a motion (Dkt. 93) just a few hours before the 5 p.m. deadline. This motion requested that the deadline be extended until 24 hours after the Court's ruling on his requests for replacement counsel and motion for withdrawal of his guilty plea. Ultimately, his sentencing memorandum was filed by the 5 p.m. deadline (Dkt. 94).

## II. ANALYSIS

**A. Request for Replacement of Counsel and Request for Withdrawal of Counsel**

"Although an indigent defendant under [this circuit's] . . . case law does not have a right to counsel of choice, the Sixth Amendment requires the substitution of appointed counsel upon a showing of good cause." United States v. Dalalli, 651 F. App'x 389, 396 (6th Cir. 2016) (punctuation modified). The district court has broad discretion in determining whether good cause exists for the withdrawal or substitution of counsel. United States v. Watson, 620 F. App'x 493, 497 (6th Cir. 2015) (explaining that a district court's determination is reviewed only for an abuse of discretion). In assessing good cause, a court considers the timeliness of the request, whether the extent of the conflict has resulted in a "complete breakdown in communication," and the impact of substitution on the public interest in prompt judicial proceedings. See Dalalli, 651 F. App'x at 396–397. Each factor counsels heavily against DuMouchelle.

### i. Timeliness

Generally, a defendant has a right to choose his own counsel if he can afford counsel. But, importantly, "[a]n accused's right to choose his own counsel cannot be manipulated to delay proceedings . . . ." United States v. Panzardi Alvarez, 816 F.2d 813, 816 (1st Cir. 1987). Here, it is apparent that DuMouchelle is requesting new counsel in order to delay his sentencing.

First, DuMouchelle's requests to withdraw and replace Gleeson were "perfectly timed to derail" his sentencing date. 2/14/22 Op. at 5. DuMouchelle began his most recent sentencing sabotage effort on July 14—the day that his sentencing memorandum was due—demanding that Gleeson be removed and that DuMouchelle be given an opportunity to hire private counsel. Def. Req. for Replacement at 3. This request, if granted, would necessarily delay his sentencing date, as new counsel would need to be given time to get up to speed on the case.

Second, DuMouchelle's requests were made nearly five months after the February 24, 2022 deadline for DuMouchelle to retain counsel and file a motion to substitute counsel. But DuMouchelle fails to give any justification for missing this deadline.

Third, DuMouchelle has a "history of requesting changes in representation as a means to delay his sentencing." 2/14/22 Op. at 16 n.7.[5] This history "greatly diminishe[s]" the likelihood that DuMouchelle is seeking to replace his counsel for any reason other than postponing his sentencing. See id.

All of these considerations counsel that DuMouchelle's requests are not bona fide and, rather, are merely a means to further delay his sentencing. As a result, his requests cannot be considered timely. See id. at 6.

### ii. Extent of the Conflict

Significantly, the grounds that DuMouchelle puts forth as reasons to withdraw and replace Gleeson are nearly identical to the grounds that he raised in his prior attempt to withdraw Gleeson. Compare Def. Request to Withdraw at 4–24, with 2/7/22 Def. Letters at PageID.289–294. As the Court previously stated, these grounds are "either demonstrably false, unsubstantiated, or fail to establish a complete communication breakdown that cannot be overcome," 2/14/22 Op. at 7; it is

---

[5] This history includes "firing" Epstein days before DuMouchelle's prior sentencing date of September 27, 2021, and "firing" Gleeson one day before the January 28 submission deadline, which would have been the prelude for setting a sentencing date. 2/14/22 Op. at 5. Further, as the Government represents, DuMouchelle's conduct in this case "is consistent with his behavior in other legal matters he has faced." Gov't Resp. to Def. Mot. to Withdraw Plea at 9. For instance, in a civil state-court action brought against DuMouchelle by one of his victims, "Dumouchelle used medical excuses and change of counsel to avoid court deadlines." Id. Additionally, "[i]n Dumouchelle's bankruptcy hearing a creditor's examination was scheduled for September 10, 2019," but at "4:46pm on September 9, 2019, Dumouchelle's counsel informed the court that Dumouchelle was retaining a new attorney and the hearing was postponed." Id.

obvious that DuMouchelle asserts these grounds as part of his transparent effort to delay his sentencing, id. at 14.

DuMouchelle alleges a few new grievances, such as Gleeson's purported failure to interview individuals that DuMouchelle directed him to interview in March or April 2022. Def. Req. to Withdraw at 4–5. DuMouchelle does not explain why he conveniently waited until right before his sentencing date to raise these new accusations. The suspicious timing of these new allegations, combined with DuMouchelle's long history of accusing counsel of being ineffective as a means of delaying his sentence, eviscerates DuMouchelle's credibility in asserting these new grievances.

Further, contrary to DuMouchelle's allegations, the record reflects that Gleeson has dutifully communicated with DuMouchelle and provided him with a praiseworthy defense. Since DuMouchelle's last attempt to remove Gleeson, Gleeson has filed a well-researched and argued brief regarding the applicability of the sophisticated means enhancement. See 5/31/22 Def. Mem. (Dkt. 69). He also diligently prepared for the hearing on loss and restitution, submitting 13 exhibits in advance of the hearing. At the hearing, he effectively cross-examined the lead FBI agent on this case. Additionally, Gleeson drafted a 54-page comprehensive sentencing memorandum, which contains, among other things, extensive post-hearing briefing on the issue of the amount of loss and restitution.[6] These recent accomplishments are consistent with the effective representation that Gleeson has provided to DuMouchelle since being appointed as his counsel. See 2/14/22 Op. at 14 (noting examples of Gleeson's "superb performance" as of February 2022,

---

[6] Gleeson was prepared to file the sentencing memorandum by the July 14 deadline but was prevented from doing by DuMouchelle's refusal to authorize the filing of the memorandum. See 7/15/22 Order at 1. With the Court's permission, Gleeson ultimately filed the memorandum on July 22.

including his persuasion of the Government to (i) "reduce the number of victims[,] thereby lowering sentencing guidelines by decreasing the victim enhancement from a four-point increase to a two-point increase[]" and (ii) "file a motion pursuant to § 5K1.1 asking the Court to impose a below-guidelines-range sentence").[7]

If there has been any breakdown in the attorney-client relationship, it is because DuMouchelle is intentionally trying to sabotage the relationship and hinder Gleeson in order to delay the sentencing date. DuMouchelle's wholesale rejection of the 52-page sentencing memorandum that Gleeson was prepared to file by the July 14 deadline is a prime example of DuMouchelle's sabotage efforts. As the Court previously explained:

> Simply put, DuMouchelle cannot claim that his relationship with Gleeson has broken down when the "breakdown" was caused by DuMouchelle's "obstinate desire" to pursue an impermissible strategy of delaying judgment day and the imposition of sentence. [See United States v. Rich, No. 98-1032, 2000 WL 923493, at *4 (6th Cir. June 29, 2000)]. DuMouchelle's criticisms of Gleeson—imagined, concocted, or exaggerated—do "not result in a lack of communication between [DuMouchelle] . . . and his attorney on those issues most relevant to [DuMouchelle's] . . . defense, nor [do] . . . [they] rise to such a level that . . . prevent[s] an adequate defense." See id.

Id. at 14.

### iii. Public Interest

Finally, the public's interest in the prompt and efficient administration of justice weighs strongly against DuMouchelle. Almost two years have elapsed since the guilty plea. Granting DuMouchelle's request for replacement and withdrawal of Gleeson as his counsel would necessarily result in yet another delay of DuMouchelle's sentence. See United States v. Marrero, 651 F.3d 453, 467 (6th Cir. 2011) (directing courts to consider whether granting a defendant's

---

[7] Although the Government has not yet filed a motion pursuant to § 5K1.1, DuMouchelle's sentencing memorandum indicates that "[t]he parties agree that Mr. DuMouchelle provided substantial assistance to the Government, and a 5K1.1 will be filed." Def. Sentencing Mem. at 48.

request for a new attorney would "cause[] any additional delay"). And as the Court has previously advised DuMouchelle, "a desire to kick the can down the road in the hopes of putting off sentencing is not [a legitimate reason to seek replacement of counsel]." 2/14/22 Op. at 16.

### B. Motion to Withdraw Plea of Guilty

DuMouchelle, relying on Federal Rule of Criminal Procedure 11(d)(2)(B), seeks to withdraw his plea of guilty. Under this rule, a defendant may withdraw a plea of guilty "after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). Courts use a multi-factor balancing test to decide whether to grant a motion to withdraw a guilty plea. These factors include:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

United States v. Haygood, 549 F.3d 1049, 1052 (6th Cir. 2008) (punctuation modified). No one factor controls, and the list is nonexclusive. Id. Further, "[t]he relevance of each factor will vary according to the circumstances surrounding the original entrance of the plea as well as the motion to withdraw." Id. (punctuation modified). Generally, a defendant should not be permitted to withdraw from a plea where he or she has made "a tactical decision to enter a plea, wait[s] several weeks [or more], and then believes he [or she] made a bad choice in pleading guilty." Id. at 1052–1053 (punctuation modified).

The above factors weigh heavily against DuMouchelle—particularly the factors concerning the timing and the circumstances of the motion. Regarding the timing, nearly two years have elapsed between his plea and his motion to withdraw it. And although the Court set a

8

deadline for DuMouchelle to file a motion to withdraw, DuMouchelle waited over four months after this deadline passed to file the instant motion, without attempting to provide any justification for his tardiness. As explained above, the timing of DuMouchelle's motion—as well as his history of filing similar motions on the eve of sentencing—strongly suggests that he intentionally delayed in filing the motion for the purpose of postponing his sentencing. Motions such as DuMouchelle's that are "made on the eve of sentencing hearing . . . are disfavored," United States v. Micciche, 165 F. App'x 379, 383 (6th Cir. 2006) (citation omitted), and motions made merely to delay sentencing are even more disfavored.

As for the circumstances underlying the motion, DuMouchelle argues that he should be permitted to withdraw his guilty plea due to (i) the ineffectiveness of his prior counsel, Epstein; (ii) the ineffectiveness of his current counsel, Gleeson; and (iii) threats and coercion. Def. Mot. to Withdraw Plea at 2.

Regarding the first ground, DuMouchelle utterly fails to substantiate his claim that Epstein was ineffective. As for the second ground, the Court has already rejected DuMouchelle's contention that Gleeson has been ineffective. And, in any case, because Gleeson did not represent DuMouchelle at the time of the plea agreement, DuMouchelle cannot show that he would not have pleaded guilty absent Gleeson's purported ineffective assistance. See Hill v. Lockhart, 474 U.S. 52, 58 (1985) (explaining that the determinative question for a challenge to a guilty plea based on ineffective assistance of counsel is whether the defendant would not have pleaded guilty and would have insisted on going to trial if the ineffective representation did not occur).

This leaves DuMouchelle's allegation of threats and coercion. At the July 18 hearing, DuMouchelle explained this theory, stating that he was coerced to accept the plea agreement due to prosecutorial threats that the Government would indict DuMouchelle's wife, Melinda Adducci,

if he did not plead guilty. The timing of this allegation must be viewed with great skepticism, like all of the charges that DuMouchelle is hurling in an attempt to avoid sentencing. Further, DuMouchelle does not substantiate this claim. And its veracity is undercut by the record. At DuMouchelle's plea hearing, the Court engaged in the following exchange with DuMouchelle:

> THE COURT: Did anybody threaten you in any way to get you to sign [the plea agreement] . . . ?
>
> THE DEFENDANT: No, your Honor. Nobody has threatened me to sign the document.
>
> THE COURT: Anybody force you in any way?
>
> THE DEFENDANT: No, your Honor. Nobody has forced me in any way to sign the document.
>
> THE COURT: Did you sign it out of your own free will?
>
> THE DEFENDANT: Yes, your Honor. I did sign it out of my own free will.
>
> THE COURT: Did anybody make any promises to you to get you to plead guilty other than the promises that are contained in that Rule 11 Plea Agreement?
>
> THE DEFENDANT: No, your Honor. Nobody has promised anything on beyond that.

Plea Tr. at 10 (Dkt. 38).[8]

The remaining factors likewise weigh against DuMouchelle. DuMouchelle has neither asserted nor maintained his innocence and, instead, he has admitted his guilt. See id. at 28 (stating,

---

[8] Even if the Government did threaten to prosecute DuMouchelle's wife, such a threat would not make his plea involuntary or coerced if probable cause existed to pursue an indictment against his wife. See Doe v. United States, No. 95-5567, 1996 WL 250444, at *5 (6th Cir. May 10, 1996) (explaining that a plea agreement, entered into upon a promise not to prosecute a third party, "is permissible if the government had probable cause to prosecute the third person"). While the Court is not equipped to make a probable cause determination at this time, it notes that testimony and evidence submitted at the hearing on loss and restitution suggest Adducci's possible involvement in DuMouchelle's schemes to defraud his victims. Such evidence includes appraisals signed by Adducci, consignment agreements signed by Adducci, and email exchanges between Adducci and victims.

in response to the Court's question "Are you pleading guilty because you believe you are guilty?" the following: "Yes, your Honor. I am pleading guilty because I believe I am guilty."). When he entered into the plea agreement, DuMouchelle was represented by counsel who bargained for his ability to challenge several aspects of the calculated Guidelines range. Finally, although DuMouchelle does not have an extensive prior criminal history, he is educated, and he is also no stranger to the legal system, having been sued in civil actions brought by several of his victims. Apparently, DuMouchelle has used similar tactics to avoid deadlines in these other cases. See Gov't Resp. to Def. Mot. to Withdraw Plea at 9.[9]

### III. CONCLUSION

DuMouchelle has tried almost every trick to further delay his sentencing. But the Court will not indulge his attempts at obstruction. DuMouchelle's request for replacement of counsel (Dkt. 82), motion to withdraw his plea of guilty (Dkt. 88), and request for withdrawal of counsel (Dkt. 89) are all denied. The sentencing date of July 28, 2022 remains unchanged.

SO ORDERED.

Dated: July 25, 2022　　　　　　　　　　　　　　s/Mark A. Goldsmith
　　　　Detroit, Michigan　　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[9] Regarding the seventh factor—potential prejudice to the government if the motion to withdraw is granted—the Government is not required to establish prejudice that would result from a plea withdrawal unless the defendant first establishes a fair and just reason for allowing the withdrawal. United States v. Benton, 639 F.3d 723, 729 (6th Cir. 2011). Here, because all preceding factors weigh against DuMouchelle, the Government is not required to show that it would be prejudiced by withdrawal of the plea. See id.

11